DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOSHUA ZELAYA,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-2710

[October 17, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Kathleen McHugh, Judge; L.T. Case No. 14013583CF10A.

Carey Haughwout, Public Defender, and Claire Victoria Madill, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, J.

Appellant, Joshua Zelaya, appeals his judgment and sentence for three counts of robbery with a weapon, two counts of attempted robbery with a weapon, one count of aggravated battery with a deadly weapon, and one count of resisting arrest without violence. On appeal, Appellant argues that his trial counsel was ineffective on the face of the record and that the court made several evidentiary mistakes. We affirm on these arguments without further comment. However, because the jury returned an inconsistent verdict on the aggravated battery with a deadly weapon count, we reverse and remand for a reduced charge and resentencing on that count. On remand, Appellant is also entitled to have several errors on his scoresheet corrected.

**Background**

Appellant and his co-defendant were accused of robbing a group of five young adults on a beach while using shirts to cover their faces and brandishing concealed items they portrayed as guns. While demanding

property, Appellant struck, but did not injure, one of the victims with the concealed item he represented was a gun. Despite their attempt at disguise, the victims recognized and were able to describe Appellant and his co-defendant as the robbers based on earlier interactions they had with them. Using the descriptions provided by the victims, the police quickly encountered Appellant and his co-defendant in the parking lot of a nearby motel. Appellant fled, but was apprehended shortly thereafter. When he was arrested, Appellant had one of the victim's debit cards in his pocket. The victims later positively identified Appellant out of photo-lineups.

Based on the foregoing, the State charged Appellant with three counts of robbery with a firearm/deadly weapon, two counts of attempted robbery with a firearm/deadly weapon, one count of aggravated battery with a deadly weapon, and one count of resisting a police officer without violence. The State also filed a pre-trial notice of intent to seek the imposition of a mandatory sentence pursuant to Appellant's status as a Prison Releasee Reoffender ("PRR").

A jury found Appellant guilty of three counts of robbery with a weapon (lesser included offenses of robbery with a firearm/deadly weapon), two counts of attempted robbery with a weapon (lesser included offenses of attempted robbery with a firearm/deadly weapon), one count of aggravated battery with a deadly weapon, and one count of resisting arrest without violence. The court adjudicated Appellant guilty pursuant to the jury's verdict and set the matter for sentencing.

At Appellant's sentencing hearing, the State submitted a scoresheet which scored Appellant for two offenses he was not convicted of: attempted first degree murder (116 points) and robbery with a firearm (46 points). It also assessed 40 additional points against Appellant for a severe victim injury although the evidence did not establish that any of the victims in the case were actually injured. In total, the scoresheet assigned Appellant 417.80 points which equated to a lowest permissible sentence of 292.35 months (24+ years) in prison and a maximum sentence of 135 years plus 364 days. Defense counsel did not object to the scoresheet.

Because Appellant qualified as a PRR, however, he was not sentenced according to his scoresheet and was instead sentenced to the minimum mandatories under the PRR statute: 30 years in prison on each first degree felony count (robbery with a weapon), 15 years on the second degree felony counts (attempted robbery with a weapon and aggravated battery), and 364 days on the resisting without violence count, all to run concurrent. This appeal follows.

2

**Analysis**

   *a) Inconsistent Verdict*

Appellant argues that by finding Appellant guilty of the lesser included offenses of robbery and attempted robbery with a weapon in lieu of robbery and attempted robbery with a firearm/deadly weapon, the jury essentially acquitted Appellant of possession of a firearm or deadly weapon. Thus, Appellant maintains that the jury's verdict finding him guilty of aggravated battery with a deadly weapon created a legal inconsistency. We agree.

"An inconsistent verdicts claim presents a pure question of law and is reviewed de novo." *Brown v. State*, 959 So. 2d 218, 220 (Fla. 2007).

In *Brown*, the Florida Supreme Court described the general principles of inconsistent jury verdicts as follows:

> As a general rule, inconsistent jury verdicts are permitted in Florida. Inconsistent verdicts are allowed because jury verdicts can be the result of lenity and therefore do not always speak to the guilt or innocence of the defendant.
>
> This Court has recognized only one exception to the general rule allowing inconsistent verdicts. This exception, referred to as the "true" inconsistent verdict exception, comes into play when verdicts against one defendant on legally interlocking charges are truly inconsistent. . . . [T]rue inconsistent verdicts are those in which an acquittal on one count negates a necessary element for conviction on another count.

*Id.* (internal citations and quotation marks omitted).

Based on these principles, a jury's finding that a defendant did not possess a firearm but at the same time used a firearm or deadly weapon is legally inconsistent when the possession or use is a necessary element of the crime. *See Gerald v. State*, 132 So. 3d 891, 895 (Fla. 1st DCA 2014)(holding that jury's verdict finding a defendant guilty of aggravated assault while at the same time finding the defendant did not possess a firearm or deadly weapon was legally inconsistent since a necessary element of aggravated assault is use of a deadly weapon).

Here, the jury acquitted Appellant of the offenses of robbery with a firearm or a deadly weapon and attempted robbery with a firearm or a deadly weapon and, instead, found him guilty of the lesser included

3

offenses of robbery and attempted robbery with a weapon. In other words, through its verdict, the jury found as a matter of law that Appellant did not possess a firearm or deadly weapon when he committed the robbery and attempted robbery offenses. Despite this finding, the jury nonetheless found that Appellant was guilty of the offense of aggravated battery, which can be committed in any of three ways: (1) intentionally or knowingly causing great bodily harm, permanent disability, or permanent disfigurement; or (2) using a deadly weapon; or (3) committing a battery on a victim who is known to be pregnant. § 784.045(1), Fla. Stat. (2014). The jury specifically found that Appellant committed aggravated battery by "using a deadly weapon." Indeed, this was the only manner in which Appellant could have been convicted as there was no evidence that the victim was injured or was pregnant. Accordingly, in light of the fact that the jury acquitted Appellant of possessing a firearm or deadly weapon when he committed the robbery offenses, it was legally inconsistent for the jury to find that Appellant was guilty of simultaneously committing an aggravated battery with a deadly weapon. *Cf. State v. Carswell,* 914 So. 2d 9, 12 (Fla. 4th DCA 2005).

Although Appellant did not raise the issue of the inconsistent verdict below, the error is fundamental as it pertains to Appellant's aggravated battery with a deadly weapon conviction. *Proctor v. State*, 205 So. 3d 784, 789 (Fla. 2d DCA 2016) (jury's legally inconsistent verdict finding defendant guilty of aggravated assault with a deadly weapon created fundamental error as to that count). Based on the presence of fundamental error in the aggravated battery with a deadly weapon count, the remedy is reversal of Appellant's conviction for aggravated battery with a deadly weapon and remand for the trial court to enter a judgment on the lesser included offense of battery. *Id.* As Appellant was sentenced to a 15 year PRR minimum mandatory on the aggravated battery conviction (a second degree felony) which would not apply to a battery conviction (a first degree misdemeanor), Appellant is also entitled to resentencing on this count. *Id.*

b) *Scoresheet Errors*

Appellant argues that he is also entitled to resentencing based on the scoresheet errors discussed above. We disagree.

A defendant who illustrates an erroneous imposition of points on his scoresheet is entitled to have the errors corrected. *Ledesma v. State*, 958 So. 2d 477, 479 (Fla. 4th DCA 2007). However, that defendant is not entitled to resentencing if the errors were harmless. *Id.* A scoresheet error "is harmless if the record conclusively shows that the trial court would

have imposed the same sentence using a correct scoresheet." *Brooks v. State*, 969 So. 2d 238, 241 (Fla. 2007).

In this case, Appellant was sentenced to the lowest sentence possible under the PRR statute. Thus, regardless of the minimum score reflected on Appellant's scoresheet, Appellant could not have received a lower sentence unless the State did not seek to sentence him as a PRR. Although Appellant argues that the State's decision to seek a PRR sentence may have been influenced by his scoresheet, the record reflects that the State filed its notice of intent to seek a PRR sentence prior to trial—well before Appellant's scoresheet was prepared. Accordingly, there is no possibility that the scoresheet errors affected either the State's PRR decision or Appellant's ensuing sentence. Thus, the scoresheet errors complained of by Appellant are harmless.

**Conclusion**

Based on the foregoing, we reverse Appellant's conviction and sentence for aggravated battery and direct the court to adjudicate Appellant guilty of the lesser included offense of battery and resentence him on that offense accordingly. In doing so, the court should also enter a corrected scoresheet.

*Reversed and remanded.*

CIKLIN, J., concurs.
CONNER, J., concurs in part and dissents in part with opinion.

CONNER, J., concurring in part and dissenting in part.

I concur with the majority opinion except for the holding that the trial court erred by determining that the jury's verdict on the aggravated battery charge was not legally inconsistent with the robbery and attempted robbery charges. I respectfully dissent because the allegations in the information, the evidence presented, and the jury instructions established that the aggravated battery charge was not legally interlocking with the robbery and attempted robbery charges.

Appellant was charged by information with three counts of robbery and two counts of attempted robbery, all of which alleged that Appellant "carried a firearm or other deadly weapon." Additionally, Appellant was charged with one count of aggravated battery which alleged that he touched or struck the victim "with a deadly weapon, to wit: a firearm used as a bludgeon." As to the robbery and attempted robbery counts, the State

specifically alleged that Appellant was "in actual possession" of a firearm. L.S. was the victim of one of the counts of robbery, as well as the aggravated battery count.

Four of the five robbery victims testified at trial, and all four testified that both Appellant and his codefendant carried guns. All four testified that the guns were covered by some kind of cloth and admitted that they did not actually see a gun. All four testified that Appellant carried a "big gun" or long gun. L.S. and another victim described the gun Appellant carried to be an "AK 47." L.S. and a different victim testified that Appellant hit L.S. on the head with the gun he was carrying. More specifically, L.S. testified:

> [Appellant] said: Hey bitch, I want all your sh\*\*. I saw, I know you have something. And then he kind of—he like hit me on the face [with the gun]. It wasn't hard, he tried to scare me.

One of the four witnesses also testified that Appellant said, with reference to the long gun he carried, that he "was not afraid to use it."

After instructing the jury on the basic elements of robbery and attempted robbery, the trial court instructed the jury that:

> If you find the defendant guilty of the crime of [robbery] [attempted robbery] then you must further determine beyond a reasonable doubt if in the course of committing the [robbery] [attempted robbery] the defendant carried some kind of a weapon. . . . *A weapon is a **deadly weapon** if it is used or threatened to be used in a way likely to **produce death or great bodily harm**.*

> If you find the defendant carried a *weapon that was not a firearm or a **deadly weapon*** in the course of committing the robbery, you should find him guilty of *robbery with a **weapon***. A weapon is defined to mean any object that could be used to **cause death or inflict serious bodily injury**.

(emphases and bold emphases added).

As to the aggravated battery count, the trial court instructed the jury that the crime had two elements. The first element was that Appellant "intentionally touched or struck" L.S. The second element was that in committing the battery Appellant "used a deadly weapon, to wit a firearm," followed by the same definition of a *deadly weapon* used for the robbery and attempted robbery counts.

As to the robbery and attempted robbery counts, the verdict form gave five options:

    A. Guilty of [Robbery] [Attempted Robbery] (**Firearm/Deadly Weapon**), as charged in the Information;

    B. Guilty of [Robbery] [Attempted Robbery] (**Weapon**), a lesser-included offence;

    C. Guilty of [Robbery] [Attempted Robbery], a lesser included offense;

    D. Guilty of Petit Theft; a lesser-included offense; and

    E. Not Guilty.

(bold emphasis added). Below option A, the jury was asked to answer "yes" or "no" to the interrogatory: "During the course of the crime committed, did the Defendant, JOSHUA ZELAYA, actually possess a **firearm**?" (bold emphasis added). For each of those counts, the jury checked option B, "Guilty of [Robbery] [Attempted Robbery] (**Weapon**)." (bold emphasis added). The firearm interrogatory was not answered, as it applied to only option A.

As to the aggravated battery count, the verdict form gave three options:

    A. Guilty of Aggravated Battery (Deadly Weapon), as charged in the Information;

    B. Guilty of Battery, a lesser-included offense; and

    C. Not Guilty.

As to that count, the jury checked option A, "Guilty of Aggravated Battery (Deadly Weapon)."

The majority correctly points out that our supreme court has determined that "[a]s a general rule, inconsistent jury verdicts are permitted in Florida." *Brown v. State*, 959 So. 2d 218, 220 (Fla. 2007) (quoting *State v. Powell*, 674 So. 2d 731, 732 (Fla. 1996)). The only recognized exception to the general rule is the "true" inconsistent verdict, which "comes into play when verdicts against one defendant on legally interlocking charges are truly inconsistent." *Id.* (quoting *Powell*, 674 So. 2d at 733). In other words, "true inconsistent verdicts are those in which

7

*an acquittal on one count negates a necessary element for conviction on another count.*" *Id.* (emphasis added) (quoting *Powell,* 674 So. 2d at 733).

Relying on *Gerald v. State,* 132 So. 3d 891 (Fla. 1st DCA 2014), the majority contends that because the jury in the instant case determined that Appellant did not actually possess a firearm or deadly weapon for the robbery charges, it was legally inconsistent for the jury to find Appellant guilty of aggravated battery with a *deadly weapon.* However, the majority's reliance on *Gerald* is problematic, because there, the First District addressed an inconsistency between the jury's verdict on the underlying offense, aggravated assault, and *the interrogatory propounded for that offense* regarding whether the defendant actually possessed a firearm during the aggravated assault. *Id.* at 892. In the instant case, the majority is using a verdict on a lesser-included offense to robbery and attempted robbery counts to negate an element relating to the aggravated battery count. I have found no other case in Florida to make such an application.

While it is true that in the information all of the robbery and attempted robbery counts, as well as the aggravated battery count, contained an allegation regarding a firearm, I contend the firearm allegation in the aggravated battery count is significantly different from the firearm allegation in the robbery and attempted robbery counts. More specifically, the aggravated battery count alleged Appellant touched or struck the victim "with a deadly weapon, to wit: a firearm *used as a bludgeon.*" In addition, as to all of the robbery and attempted robbery counts, as well as the aggravated battery count, the jury was instructed that "[a] weapon is a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm." Moreover, as to the robbery and attempted robbery counts, but not the aggravated battery count, the jury was instructed that "[a] weapon is defined to mean *any object that could be used to cause death or inflict serious bodily injury.*"

The structure of the verdict form also indicated to the jury a difference as to the deadly weapon allegation between the aggravated battery count and the robbery and attempted robbery counts. As to the robbery and attempted robbery counts, the verdict form makes two specific references to a firearm: "Guilty of [Robbery] [Attempted Robbery] (*Firearm*/Deadly Weapon)," followed by an interrogatory asking whether Appellant "actually possess[ed] a *firearm.*" Significantly, however, the verdict form as to the aggravated battery count, is completely devoid of the word "firearm." As discussed above, the jury was instructed that a *deadly weapon* is "*used in a way likely to* **produce death or great bodily harm**," and a *weapon* is an "object that could be used to **cause death or inflict serious bodily injury**."

8

As L.S. and another witness testified, and the State clearly argued to the jury, L.S. was hit in the head with what was perceived to be a long gun under a cloth. Like the majority, it appears to me that the jury was satisfied that whatever Appellant was holding under the cloth was in fact not a long gun. However, it appears to me that the jury could logically have concluded, based on the allegations, the evidence, and the jury instructions, that whatever Appellant was holding under the cloth, which he used to hit L.S. in the head, was a weapon "threatened to be used in a way likely to produce death or great bodily harm," particularly in light of the testimony that he "was not afraid to use it." Thus, I conclude that the jury's verdicts were not legally inconsistent when the jury found Appellant guilty of robbery and attempted robbery using a weapon, and aggravated battery involving a deadly weapon, particularly where the State alleged the weapon was used as a bludgeon.

Additionally, I think our opinion in *Debiasi v. State*, 681 So. 2d 890 (Fla. 4th DCA 1996) is instructive for the resolution of this case. There, the defendant was charged with battery on a law enforcement officer and resisting arrest with violence. *Id.* at 890. The same officer was alleged to be the victim for both counts. *Id.* As to both counts, the evidence was that the defendant resisted the officer by striking him during an arrest. *Id.* The jury found the defendant not guilty of battery on a law enforcement officer, but guilty of resisting arrest with violence. *Id.* On appeal, the defendant argued the jury verdict finding him guilty of resisting arrest with violence was inconsistent with the verdict finding him not guilty of battery on a law enforcement officer, where the conduct was the same for both offenses. *Id.* We held that "even if the charges are essentially mirror images of each other, battery on a law enforcement officer is not an element of resisting arrest with violence." *Id.* at 891. If battery on a law enforcement officer and resisting arrest with violence are "mirror image charges" because the conduct of the defendant in striking the officer was the same for both offenses, then it seems to me that Appellant carrying an object under a cloth which appeared to be a long gun to the witnesses, makes the aggravated battery charge a "mirror image charge" to the robbery and attempted robbery charges in this case. However, similar to *Debiasi*, aggravated battery is not an element of the robbery or attempted robbery charges. In other words, similar to *Debiasi*, the charges in this case are not legally interlocking.

I concede that all of the robbery, attempted robbery, and aggravated battery charges in this case were *factually* interlocking (Appellant was carrying an object covered by a cloth that the witnesses believed was a long gun while committing all of the offenses). However, I do not agree the aggravated battery charge was *legally* interlocking with the robbery and

9

attempted robbery charges. I also do not agree that a verdict on a lesser-included offense for one charge can be used to negate an element of a completely different and legally distinct charge.

As our supreme court has said, "Inconsistent verdicts are allowed because jury verdicts can be the result of lenity and therefore do not always speak to the guilt or innocence of the defendant." *Brown*, 959 So. 2d at 220 (quoting *Powell*, 674 So. 2d at 733). Our supreme court has defined "true inconsistent verdicts" as "those in which *an acquittal on one count* negates a necessary element for conviction on another count." *Id.* (emphasis added) (quoting *Powell*, 674 So. 2d at 733). I understand "an acquittal on one count" to refer to an entire charge. The First District has extended the definition of "true inconsistent verdicts" to include an inconsistency between a determination of guilt as to one count and an interrogatory response *as to the same count*. *Gerald*, 132 So. 3d at 892. The majority in this case is now expanding the definition of a "true inconsistent verdict" to include an inconsistency between a verdict on a lesser-included offense on one count and a determination of guilt as to a separate count *charging a distinctly different crime*. Where an entire count serves as a predicate element for another count, logically the two counts are legally interlocking. Where an interrogatory response is a predicate for a determination of guilt as to the same count, logically the interrogatory response and the determination of guilt are legally interlocking *as to the same count*. However, where both the charging document and the jury instructions describe a particular element differently, I do not agree that a lesser-included offense to one charge is legally interlocking with a determination of guilt as to a distinctly different crime. Thus, I respectfully dissent.

\*        \*        \*

**Not final until disposition of timely filed motion for rehearing.**